M. Jonathan Hayes (Bar No. 90388)
Of Counsel
Margarit Kazaryan (Bar No. 310031)
**SIMON RESNIK HAYES LLP**
15233 Ventura Blvd., Suite 250
Sherman Oaks, CA 91403
**Telephone:** (818) 783-6251
**Facsimile:** (818) 827-4919
jhayes@SRHLawFirm.com

*Attorneys for Debtor*
WHAA, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>**WHAA, LLC,**<br><br>Debtor. | Case No. 6:17-bk-14661-MW<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C. §363 FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS, AND GRANTING CERTAIN OTHER RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF HENRY WALLACH, BRIAN D. MELKESIAN IN SUPPORT THEREOF**<br><br>Date: February 27, 2018<br>Time: 2:00 p.m.<br>Place: Courtroom 225<br>        3420 12th Street, Riverside, CA |

**TO THE HONORABLE MARK WALLACE, UNITED STATES BANKRUPTCY JUDGE; OSM INVESTMENT COMPANY; TMC FINANCING; SAN BERNARDINO COUNTY TAX COLLECTOR; AND ALL CREDITORS AND PARTIES IN INTEREST:**

**SIMON RESNIK**
**HAYES LLP**

PLEASE TAKE NOTICE that on February 27, 2018, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 225 of the above-entitled Court located 3420 12TH Street, Riverside, California, to determine, WHAA LLC, the Debtor (hereinafter the "Debtor"), in the above-captioned Chapter 11 case, shall and hereby does, respectfully move this Court for the entry of an order authorizing and approving the sale of its real property located at 5512-A Arrow Hwy, Montclair, CA 91763 (hereinafter the "Property") to Joel's Automotive, Inc. or its assignee (the "Buyer"), an individual unrelated to the Debtor, for the sum of $844,000, or to such other person or entity as may successfully overbid at the hearing, free and clear of all liens, claims and interests pursuant to 11 U.S.C. §363, and granting certain additional relief requested in the attached Memorandum of Points and Authorities.  The executed Purchase and Sale Agreement ("PSA") is attached hereto as **Exhibit "A."**

The basis for the Motion is that the sale of the Property is in the best interests of the estate as it will pay a significant amount of secured debt including property taxes and leave funds available for the use of the Debtor.

The Motion is based upon this Notice of Motion and Motion, the attached Declaration, all pleadings and records on file in this case, and upon such other evidentiary matters as may be presented to the Court regarding the Motion.


**PLEASE TAKE FURTHER NOTICE** that pursuant to *Local Bankruptcy Rule 9013-1*, any party opposing the relief sought by the Motion must file a written opposition setting forth the facts and law upon which the opposition is based and must appear at the hearing on the Motion .  Any factual allegations set forth in such written response must be supported by competent and admissible evidence.

Any response or opposition to the Motion  must be filed with the Court and served on Debtor's counsel, the Office of the U.S. Trustee, and any other required parties in interest, at least fourteen (14) days prior to the scheduled hearing date on the Motion  (not excluding Saturdays, Sundays or legal holidays).

SIMON RESNIK
HAYES LLP

Pursuant to *Local Bankruptcy Rule 9013-1*, any response not timely filed and served may be deemed by the Court to be consent to the granting of the relief requested by the Motion.

WHEREFORE, Debtor respectfully requests that the Court enter an order:

(1)     Finding that Notice of the Motion was adequate and appropriate under the circumstances;

(2)     Granting the Motion in its entirety;

(3)     Authorizing and approving the sale of the Property to the Buyer or to another successful bidder, free and clear of all liens, claims, and interests;

(4)     Approving the bidding procedures described in the Memorandum of Points and Authorities;

(5)     Finding that the successful bidder is a good faith purchaser for the purposes of 11 U.S.C. §363(m);

(6)     Authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Property;

(7)     Authorizing the payment of the commissions described in the Memorandum of Points and Authorities at the close of escrow;

(8)     Authorizing payments of liens, claims and interests on and against the Property (collectively referred to herein as the "Liens, Claims and Interests");

(9)     Authorizing the payment of real property taxes, plus interest, owed on the Property and all usual and customary escrow and closing and recording costs generally attributable to a seller of real property, *if any,* at the close of escrow;

(10)    Transferring and attaching the liens, claims, and interests or portions of liens, claims and interests still unpaid at the close of escrow (collectively referred to as the "Remaining Liens, Claims, and Interests"), *if any,* from the Property

SIMON RESNIK
HAYES LLP

to the net proceeds of the sale of the Property with the same force, effect, validity and priority that any and all such Liens, Claims and Interests had with respect to the Property;

(11)     Authorizing the Debtor to hold that portion of the sale proceeds attributable to disputed claims of exemption, liens and encumbrances, *if any*, pending further orders of this Court;

(12)     Compelling all holders of the liens and encumbrances to execute any and all documentation that may be required to allow escrow to close;

(13)     Waiving the fourteen-day (14) waiting period set forth in Bankruptcy Rule 6004(h); and

(14)     Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 5, 2018                              **SIMON RESNIK HAYES LLP**

                                   By: _____/s/ M. Jonathan Hayes_____
                                          **M. Jonathan Hayes**
                                          *Attorneys for Debtor*
                                          WHAA LLC

I.    INTRODUCTION ................................................................................. 6

II.   SUMMARY OF THE SALE................................................................. 7

    A.    Real Property at Issue and Brief Summary of the Terms of the
Sale. ........................................................................................... 7

    B.    Marketing Efforts ....................................................................... 7

    C.    Payment of Liens, Encumbrances and Other Expenses. .............. 9

    D.    Sale of the Property is in the Best Interest of the Estate. ........... 10

    E.    Recommended Overbidding Procedures. .................................... 10

III.  DISCUSSION ................................................................................... 11

    A.    Debtor Has Complied with All Notice Requirements Under the
Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and
Local Bankruptcy Rules Governing the Sale of the Property. .... 11

    B.    This Motion Should be Approved Because Good Business
Reasons Exist to Approve the Sale of the Property, the
Purchase Price for the Property is Fair and Reasonable, and the
Proposed Sale is in the Best Interests of the Estate and
Creditors. ................................................................................. 12

        1.    Sound Business Purpose................................................. 13

        2.    Fair and Reasonable Price. ............................................. 13

        3.    Adequate Marketing. ..................................................... 14

        4.    Good Faith. .................................................................... 14

        5.    Accurate and Reasonable Notice..................................... 15

    C.    The Sale of the Property Should Be Free and Clear of All
Liens, Claims, and Interests Under 11 U.S.C. § 363(f)............... 15

    D.    Debtor Requests that the Court Waive the 14-Day Waiting
Period in Bankruptcy Rule 6004(h)............................................ 16

IV.   CONCLUSION ................................................................................. 17

DECLARATION OF HENRY WALLACH ................................................ 19

DECLARATION OF BRIAN D. MELKESIAN ......................................... 21

SIMON RESNIK
HAYES LLP

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

3      WHAA LLC ("the Debtor"), Debtor in the above-referenced Chapter 11 case,

4   commenced its bankruptcy case by filing a voluntary petition under Chapter 11 on June 2,

5   2017.  The Debtor is operating its business and managing its financial affairs as a Debtor-

6   in-Possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

7      The Debtor is a California limited liability company formed in 2009.  WHAA LLC

8   sole assets are two commercial buildings located at 5494 Arrow Highway, Montclair,

9   California and 5512 Arrow Highway, Montclair, California.  Henry Wallach and Akemi

10  Uomoto are 50% shareholders of both WHAA and BioData.

11      The Debtor owes secured creditor OSM Loan Acquisitions IX Limited Partnership

12  aproximately $680,000 and TMC Financing (SBA) approximately $487,000 for both

13  Properties.  It also owes the San Bernardino Tax Collector ("Tax Collector")

14  approximately $140,000 for both properties.  OSM Investment Company and TMC

15  Financing also have personal guarantees of the Debtor's primary shareholders Henry

16  Wallach and Akemi Uomoto.  TMC has commenced a state court action against the

17  guarantors which is pending at this time.

18      This case is affiliated with Debtor BioData Medical Laboratories, Inc. ("BioData")

19  filed on November 28, 2016.  BioData was the tenant that occupied the commercial

20  buildings owned by WHAA.  BioData filed a chapter 11 case but it was converted to

21  chapter 7.  The BioData laboratory was being operated by the trustee, Todd Frealy.

22      The BioData lab was sold by the Chapter 7 Trustee to Healthquest Clinical

23  Laboratory, Inc.  Concurrent with the sale, the Debtor entered into a *three month* lease of

24  the 5494 Arrow Highway building at $13,000 per month.

25      The 5512 Arrow Highway property being sold here is designed for automotive

26  repair use.  It is vacant except for BioData records which are now owned by Healthquest.

27

28

**SIMON RESNIK**
**HAYES LLP**

## II.   SUMMARY OF THE SALE

*A. Real Property at Issue and Brief Summary of the Terms of the Sale.*

Through this Motion, Debtor seeks to sell its real property, a commercial building located at 5512-A Arrow Hwy, Montclair, CA 91763 (the "Property").

The Property was initially listed for sale at $956,080.  After several counteroffers and negotiations between the parties and other interested persons, Debtor accepted the offer of Joel's Automotive, Inc. or its assignee (the "Buyer"), an entity entirely unrelated to the Debtor, to purchase the Property for $844,000.  The Purchase and Sale Agreement is attached hereto as **Exhibit "A."**  The Buyer's agent is Lorinda Johnson of Re3/Max Resources (hereinafter the "Buyer's Broker").

By way of summary, the principal terms of agreement are as follows:

    (1) Purchase price is $844,000;

    (2) The Property will be sold "as is, where is," with no warranties or representations of any kind whatsoever;

    (3) Buyer will pay $84,400 as a cash down payment;

    (4) Buyer will pay the remainder of the purchase price by obtaining a new loan. This offer is contingent on Buyer obtaining a new loan.  The Buyer has until February 28, 2018 to obtain the new loan.

    (5) Buyer has made a deposit into escrow of $20,000.  Buyer will make an additional $20,000 upon removal of all contingencies.  At that point, the deposits become non-refundable.

    (6) Escrow is to close on March 15, 2018 (the "Proposed Closing Date").

*B. Marketing Efforts*

The Debtor listed both properties for sale with Brian Melkesian of Lee & Associates in Ontario (hereinafter the "Broker") in or about the beginning of July 2017. The listing agreement provided that Broker will be compensated 6% of the purchase price

**SIMON RESNIK**
**HAYES LLP**

or will share in the commission with a prospective buyer's agent/broker (3% each).  The Property has been listed on the Multiple Listing Service ("MLS") as well as advertised locally and nationally.  It has been listed on the commercial  real estate websites: Costar, Loopnet, and AIR

On July 6, 2017, Debtor filed its Motion for Order Employing Professional (LBR 2014-1) as Real Estate Broker (Docket No. 24); the motion was approved by entry of order thereon on July 27, 2017 (Docket No. 30).

The original listing price with Mr. Melkesian for the two buildings was $1,129,440 for the 5494 property and $956,080 for the 5512 property or a total of $2,085,000.  Those prices were determined primarily by the information and recommendation made by the broker.  The values were admittedly at the higher end and were based on $175.00 per square foot.  Recently the Debtor's managing member Henry Wallach authorized the Broker to reduce the asking prices by a total of $160,000 to a total of $1,925,000 or $165.00.

The 5512 Property is an automotive repair type building and prospective buyers have been hesitant to consider it for warehouse use, especially since there are no restrooms.  The Buyer is an auto repair shop and made what the Debtor considers to be a reasonable offer considering that the building has been listed for six months.  The Buyer has a business nearby.  He found the property through the For Sale sign.

The Broker networked with other agents and brokers who know/have buyers for properties of this type.  Broker estimates that he has shown the Property to at least 20 interested persons.  He met with agents representing prospective buyers at the property as quickly as he was able to determine a mutually acceptable date/time.

Additionally, Broker conducted negotiations with interested parties and had conversations with other agents and/or developers, who ultimately determined not to submit written offers or who wanted to submit offers below $800,000.

**SIMON RESNIK
HAYES LLP**

8

Based on the forgoing, Debtor and Broker believe that Buyer's offer is the best offer that will be received for the purchase of this Property and Debtor has therefore chosen to accept it.

*The Broker, Buyer, Buyer's Broker and Debtor have no prior connections or relation, except as set forth herein.*  Mr. Wallach and Ms. Uomoto have made no arrangements or have any understandings about having any future dealings with the Buyer.

Broker has shown the Notice of Motion to the Buyer's Broker and has discussed with the Buyer's Broker the Bankruptcy procedures required for the sale of the Property.

*C.  Payment of Liens, Encumbrances and Other Expenses.*

The proposed sale will produce funds to pay the following:

| Purchase Price | $844,000 |
|---|---|
| 1st Lienholder –   OSM Loan Acquisitions IX Limited Partnership | $260,000 |
| 2nd lienholder – TMC Financing - SBA | $174,000 |
| Property taxes | $ 54,000 |
| Agent commissions (6%) | $ 50,000 |
| Other estimated closing costs  (including but not limited to escrow and title charges, government recording and transfer charges)[2%] | $ 17,000 |
| U.S. Trustee fees | $   4,875 |
| **Remaining Proceeds of Sale** | **$284,125** |

The amounts above are approximate.  The liens will be paid in full out of escrow. The two secured lienholders above have liens on the Debtor's other parcel of real property, 5494 Arrow Hwy.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SIMON RESNIK
HAYES LLP**

The Debtor is a "pass through" entity for tax purposes and thus there will be no tax consequences to the Debtor upon completion of the sale.

**D.** *Sale of the Property is in the Best Interest of the Estate.*

Debtor respectfully submits that the proposed sale is in the best interest of the estate and all creditors as the sale will generate a significant profit for the estate, as shown in the chart above. Debtor will deposit the net proceeds of the sale into its Debtor-in-Possession general bank account for the benefit of the estate and all creditors. The projected sale of the Property will result in disposing of a substantial portion of the estate's secured debt including the property taxes which are accruing interest at 18% per year.

*E. Recommended Overbidding Procedures.*

Debtor proposes the following overbidding procedures:

(1) The initial overbid must be at least $35,000 more than the initial bid of $844,000. The overbid must be on substantially the same terms as set forth in the complete Purchase and Sale Agreement, attached hereto as **Exhibit "A."**

(2) Overbid increments will be $5,000 after the initial overbid.

(3) Any successful overbidder must be able to close by the Proposed Closing Date.

(4) Any party wishing to overbid on the Property during the hearing on the Motion must contact Debtor's counsel at least thirty-six (36) hours prior to the hearing and provide evidence of available financial resources such as funds and/or proof of ability to finance up to the overbidder's maximum bid to the Debtor's reasonable satisfaction.

(5) Any overbidder wishing to overbid on the Property during the hearing must also submit, before the time of the hearing, a deposit for the purchase of the Property, by cashier's check or other cash equivalent in the amount of at

SIMON RESNIK
HAYES LLP

least $100,000 made payable to "SIMON RESNIK HAYES LLP CLIENT

TRUST ACCOUNT." The successful overbidder's deposit will be applied

towards the purchase of the Property, and will not be refunded in the event

the overbidder cannot successfully close escrow pursuant to the terms of the

sale as proscribed herein.

(6) If an agent/broker brings a prospective bidder who is ultimately the

successful bidder and to whom the sale is approved, that agent/broker will

share in the commission with Broker; the total commission shall not exceed

6% (3% even split between them).

### III.   DISCUSSION

*A. Debtor Has Complied with All Notice Requirements Under the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules Governing the Sale of the Property.*

Section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). Section 102(1) defines "after notice and a hearing" as "after such notice as is appropriate in the particular circumstances." 11 U.S.C. § 102(1).

Rule 6004(a) of the Federal Rules of Bankruptcy Procedure states that notice of a proposed sale of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with §363(b)(2) of the Code. Fed. R. Bankr. Proc. 6004(a).

Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure requires at least twenty-one (21) days' notice of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortened the time or directs another method of giving notice. Fed. R. Bankr. Proc. 2002(a)(2).

**SIMON RESNIK
HAYES LLP**

Rule 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sales, the terms and conditions of any private sale, and the time fixed for filing objections. Fed R. Bankr. Proc. 2002(c)(1).  It also provides that the notice of sale or property is sufficient if it generally describes the property. *Id.*

Local Bankruptcy Rule 6004-1(c) states that unless otherwise ordered by the court and subject to Fed. R. Bankr. Proc. 6003(b), an order authorizing the sale of estate property other than in the ordinary course of business may be obtained upon motion by the debtor-in-possession after notice and a hearing pursuant to LBR 9013-1(d).

As set forth herein and in the Notice of this Motion, Debtor has complied with all of the above provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules.  Further, Debtor will serve <u>all creditors of the estate, the United States Trustee, and all parties requesting special notice,</u> with the Notice of Motion and this Motion.

**B.** *This Motion Should be Approved Because Good Business Reasons Exist to Approve the Sale of the Property, the Purchase Price for the Property is Fair and Reasonable, and the Proposed Sale is in the Best Interests of the Estate and Creditors.*

As a general matter, a court considering a motion to approve a sale under §363(b) should determine from the evidence presented before it that a "good business reason" exists to grant such a motion. *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2d. Cir. 1983).

In addition, the Court must further find it is in the best interest of the estate. To make this determination, a Court should consider whether:

(1) the sale is fair and reasonable (*i.e.,* the price to be paid is adequate);

(2) the property has been given adequate marketing;

(3) the sale is in good faith (*i.e.,* there is an absence of any lucrative deals with insiders); and

(4) adequate notice has been provided to creditors.

SIMON RESNIK
HAYES LLP

*In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841-2 (Bankr. C.D. Cal. 1991); *In re Mama's Original Foods, Inc.,* 234 B.R. 500, 502-505 (C.D. Cal. 1999).

Debtor submits that the proposed sale of the Property to Buyer satisfies each of these requirements.

### 1. Sound Business Purpose.

The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988) adopted a flexible case-by-case test to determine whether the business purpose for a proposed sale justifies disposition of property of the estate under §363(b).

The facts pertaining to the sale at issue here amply substantiate Debtor's business decision that the contemplated sale of the Property to the Buyer, or a successful overbidder, serves the best interests of the estate's creditors and merits the Court's approval:  (a) the Property has been actively marketed by the Broker; (b) the proposed sale, or any overbid, of the Property will result in the Debtor obtaining the highest and best price for the Property and significant net proceeds to the estate; (c) the projected sale of the Property will result in disposing of the estate's sole secured creditor and thereby streamlining future efforts by the Debtor in confirming a Chapter 11 plan of reorganization.

Debtor therefore believes that the proposed sale of the Property is in the best interest of the estate and *all* creditors.

### 2. Fair and Reasonable Price.

In order for a sale to be approved under §363(b), the purchase price must be fair and reasonable. *See generally, In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985). The trustee is given substantial discretion in this regard. *Id*.  In addition, Courts have broad discretion with respect to matters under §363(b). *See Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 278 (Bankr. N.D. Ga. 1985).  In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold. *In re Wilde Horse*

**SIMON RESNIK
HAYES LLP**

*Enterprises, Inc.*, 136 B.R. at 841 (*citing Matter of Chung King, Inc.,* 753 F.2d 547 (7th Cir. 1985), *In re Alpha Industries, Inc.*, 84 B.R. 703, 705 (Bankr. Mont. 1988)).

As discussed above, the Property has been actively marketed by the Broker. The Buyer is a serious buyer and has made a sound offer. Thus, based on the response to the foregoing efforts and the Debtors' and Broker's familiarity with current market conditions, Debtors believe that the price offered for the Property by the Buyer, or any overbidder, represents the fair market value of the Property.

As a result, the Debtors submit that the final purchase price to be paid by the Buyer or an overbidder, represents a fair and reasonable price for the Property.

**3.**  Adequate Marketing.

The efforts of the Broker to market the Property have been extensive. The Property has been listed on the Multiple Listing Service ("MLS") as well as advertised locally and nationally. Broker has networked with other agents and brokers who know/have buyers for properties of this type.

Debtor has evaluated the current Buyer's offer in particular, and believes that the price is reasonable given market values. Debtor therefore seeks to apply the proceeds of the sale to pay the lienholders on the Property and will deposit the net proceeds of the sale into its Debtor-in-Possession general bank account for the benefit of the estate and *all* creditors. Based on the foregoing, the Debtor submits that the Property has been more than adequately marketed.

**4.**  Good Faith.

When a Bankruptcy Court authorizes a sale of assets pursuant to § 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149 (3d Cir. 1986). With respect to conduct in conjunction with the sale of the property, the good faith requirement focuses principally on

SIMON RESNIK
HAYES LLP

14

whether there is any evidence of "fraud, collusion between the purchase and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id*. at 147; *In re Wilde Horse Enterprises,* 136 B.R. at 842.

Debtor herein negotiated the agreement with the Buyer at arm's length and the Buyer is not an "insider" of the Debtor as that term is defined in the Bankruptcy Code. 11 U.S.C. § 101(31).

There has been no fraud or collusion in connection with the proposed sale because everyone who expressed an interest in the Property was able to make an offer on the Property, and which offer was thoroughly considered by the Debtor.  Based on the foregoing, the Debtor submits that the Buyer is a "good faith" purchaser.

**5.**  Accurate and Reasonable Notice.

As set forth above, Debtor will serve all creditors of the estate, the United States Trustee, and all parties requesting special notice, with the Notice of Motion and this Motion.  The Notice of Motion includes the date, time and place of the sale and the time fixed for filing objections thereto. The Broker has provided a copy of the Notice of Motion and Motion to the Buyer's Broker.

Further, Debtor will file Form 6004-2 with the Clerk of the Bankruptcy Court, as required by Local Bankruptcy Rule 6004-1(f), so that the Clerk of the Bankruptcy Court can publish information regarding the proposed sale.

Debtor therefore submits that the notice of the proposed sale should be deemed adequate, accurate and reasonable by the Court.

***C.** The Sale of the Property Should Be Free and Clear of All Liens, Claims, and Interests Under 11 U.S.C. § 363(f).*

Bankruptcy Code § 363(f) provides that a trustee may sell property of the estate "free and clear of any interest in such property" if:

**SIMON RESNIK
HAYES LLP**

(1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Because § 363(f) is in the disjunctive, the Trustee must only meet one of the five (5) subsections of § 363(f) in order to sell the Property free and clear of all liens, claims, and interests. *In re Whittemore,* 37 B.R. 93, 94 (Bankr. D. Or. 1984).

Debtor herein will apply the proceeds of the sale to pay the lienholders on the Property in full and will deposit the net proceeds of the sale into its Debtor-in-Possession general bank account for the benefit of the estate and *all* creditors.

### D. *Debtor Requests that the Court Waive the 14-Day Waiting Period in Bankruptcy Rule 6004(h).*

Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the sale of property is stayed until the expiration of fourteen (14) days after entry of the order, unless the Court orders otherwise.

Here, all parties with a lien, claim or interest in the Property, and all creditors of the estate, have been served with notice of the proposed sale and an opportunity to object and the ***fourteen-day (14) waiting period could only operate to delay the closing of escrow.***

As a result, under these circumstances, the Court should waive the fourteen-day (14) stay of Bankruptcy Rule 6004(h) to permit the Debtor to proceed with the close of escrow on the sale as soon as possible.

SIMON RESNIK
HAYES LLP

16

## IV.    **CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court enter an order:

(1)    Finding that Notice of the Motion was adequate and appropriate under the circumstances;

(2)    Granting the Motion in its entirety;

(3)    Authorizing and approving the sale of the Property to the Buyer or to another successful bidder, free and clear of all liens, claims, and interests;

(4)    Approving the bidding procedures described in the Memorandum of Points and Authorities;

(5)    Finding that the successful bidder is a good faith purchaser for the purposes of 11 U.S.C. §363(m);

(6)    Authorizing the Debtor to take all necessary and reasonable steps to consummate the sale of the Property;

(7)    Authorizing the payment of the commissions described in the Memorandum of Points and Authorities at the close of escrow subject to Debtor's objections;

(8)    Authorizing payments of liens, claims and interests on and against the Property (collectively referred to herein as the "Liens, Claims and Interests");

(9)    Authorizing the payment of real property taxes, plus interest, owed on the Property and all usual and customary escrow and closing and recording costs generally attributable to a seller of real property, *if any,* at the close of escrow;

(10)    Transferring and attaching the liens, claims, and interests or portions of liens, claims and interests still unpaid at the close of escrow (collectively referred to as the "Remaining Liens, Claims, and Interests"), *if any*, from the Property to the net proceeds of the sale of the Property with the same force, effect,

**SIMON RESNIK
HAYES LLP**

validity and priority that any and all such Liens, Claims and Interests had with respect to the Property;

(11)    Authorizing the Debtor to hold that portion of the sale proceeds attributable to disputed claims of exemption, liens and encumbrances, *if any*, pending further orders of this Court;

(12)    Compelling all holders of the liens and encumbrances to execute any and all documentation that may be required to allow escrow to close;

(13)    Waiving the fourteen-day (14) waiting period set forth in Bankruptcy Rule 6004(h); and

(14)    Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 5, 2018                              **SIMON RESNIK HAYES LLP**

                                           **By:** _____**/s/ M. Jonathan Hayes**_____
                                                      **M. Jonathan Hayes**
                                                      *Attorneys for Debtor*
                                                      WHAA, LLC

## <u>DECLARATION OF HENRY WALLACH</u>

I, HENRY WALLACH, declare as follows:

1.      I am the managing member of WHAA LLC, the Debtor and Debtor-in-Possession ("Debtor') in the above captioned bankruptcy.  I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto.

2.      The Debtor filed its Chapter 11 Petition on June 2, 2017.  The Debtor is operating its business and managing its financial affairs as a DIP pursuant to Section 1107 and 1108 of the Bankruptcy Code.  The Debtor is a California limited liability company formed in 2009.  Akemi Uomoto and I are 50% shareholders of both WHAA and BioData.

3.      The Debtor's sole assets are two commercial buildings commonly described as 5494 Arrow Highway and 5512 Arrow Highway, in Montclair, California (jointly the "Properties") which are the subject of this case.  I believe there is significant equity in the properties.

4.      The Debtor owes secured creditor OSM Investment Company approximately $680,000 and TMC Financing (SBA) approximately $487,000 for both Properties.  It also owes the San Bernardino Tax Collector ("Tax Collector") approximately $140,000 for both properties.  OSM Investment Company and TMC Financing also have personal guarantees of the Debtor's primary shareholders Akemi Uomoto and I.

5.      The 5512 Arrow Highway property being sold here is designed for automotive repair use.   It is vacant except for BioData records, now owned by Healthquest.

6.      The Property was initially listed for sale at $956,080.  After several counteroffers and negotiations between the parties, Ms. Uomoto and I accepted the offer of Joel's Automotive, Inc. or its assignee (the "Buyer") to purchase the Property for

**SIMON RESNIK
HAYES LLP**

$844,000.  A true and correct copy of the Purchase and Sale Agreement is attached hereto as **Exhibit "A."**

7.  We listed both properties for sale with Brian Melkesian of Lee & Associates in Ontario (hereinafter the "Broker") in or about the beginning of July 2017.  The original listing price with Mr. Melkesian for the two buildings was $1,129,440 for the 5494 property and $956,080 for the 5512 property or a total of $2,085,000.  Those prices were determined primarily by the information and recommendation made by Mr. Melkesian.

8.  It is my belief that Buyer's offer is the best offer that will be received for the purchase of this Property and Debtor has therefore chosen to accept it.

9.  Neither I nor Ms. Uomoto or our spouses have any prior connections or relationship with the Buyer, or its broker.  We have made no arrangements about having any future dealings with them.

10.  The Debtor is a "pass through" entity for tax purposes and thus there will be no tax consequences to the Debtor upon completion of the sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 5, 2018, at Montclair, California.

SEE NEXT PAGE

_____

Henry Wallach
*Declarant*

SIMON RESNIK
HAYES LLP

$844,000. A true and correct copy of the Purchase and Sale Agreement is attached hereto as **Exhibit "A."**

7.     We listed both properties for sale with Brian Melkesian of Lee & Associates in Ontario (hereinafter the "Broker") in or about the beginning of July 2017. The original listing price with Mr. Melkesian for the two buildings was $1,129,440 for the 5494 property and $956,080 for the 5512 property or a total of $2,085,000. Those prices were determined primarily by the information and recommendation made by Mr. Melkesian.

8.     It is my belief that Buyer's offer is the best offer that will be received for the purchase of this Property and Debtor has therefore chosen to accept it.

9.     Neither I nor Ms. Uomoto or our spouses have any prior connections or relationship with the Buyer, or its broker. We have made no arrangements about having any future dealings with them.

10.     The Debtor is a "pass through" entity for tax purposes and thus there will be no tax consequences to the Debtor upon completion of the sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 2, 2018, at Montclair, California.

Henry Wallach
*Declarant*

SIMON RESNIK
HAYES LLP

## DECLARATION OF BRIAN D. MELKESIAN

I, Brian D. Melkesian, declare as follows:

1.      I am a licensed salesperson and have been so licensed since 2008 (License No. 01839590) issued by the Department of Real Estate, state of California.  I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto.

2.      The 5512 Arrow Highway property being sold here is designed for automotive repair use.  It is vacant except for BioData records, now owned by Healthquest.

3.      The original listing price for the two buildings was $1,129,440 for the 5494 property and $956,080 for the 5512 property or a total of $2,085,000.  Those prices were determined primarily by the information and knowledge I have about similar properties in the general vicinity.  Recently the Debtor's managing member Henry Wallach authorized me to reduce the asking prices by a total of $160,000 to a total of $1,925,000.

4.      The values were admittedly at the higher end and were based on $175.00 per square foot which was later reduced to $165.00 per square foot.

5.      The 5512 Property is an automotive repair type building and prospective buyers have been hesitant to consider it for warehouse use, especially since there are no restrooms.  The Buyer is an auto repair shop and made what the Debtor considers to be a reasonable offer considering that the building has been listed for six months.  The Buyer has a business nearby.  He found the property through the For Sale sign.

6.      After several counteroffers and negotiations between the parties, Debtor accepted the offer of Joel's Automotive, Inc. or its assignee (the "Buyer"), an individual entirely unrelated to the Debtor, to purchase the Property for $844,000.  The Purchase and Sale Agreement is attached hereto as **Exhibit "A."**

**SIMON RESNIK
HAYES LLP**

7.      The Property has been listed on the Multiple Listing Service ("MLS") as well as advertised locally and nationally.  The Property has also been listed on the commercial  real estate websites: Costar, Loopnet, and AIR

8.      I have networked with other agents and brokers who know/have buyers for properties of this type.  I estimate that I have shown the Property to at least 20 interested persons.  I have met with agents representing prospective buyers at the property as quickly as I was able to determine a mutually acceptable date/time.  I conducted negotiations with interested parties and had conversations with other agents and/or developers, who ultimately determined not to submit written offers or who wanted to submit offers below $800,000.

9.      I believe that Buyer's offer is the best offer that will be received for the purchase of this Property.  I have no business or personal relationship with the Buyer or its owners.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 5, 2018, at _____, California.

SEE NEXT PAGE

_____
          Brian D. Melkesian
          *Declarant*

**SIMON RESNIK
HAYES LLP**

7.       The Property has been listed on the Multiple Listing Service ("MLS") as well as advertised locally and nationally. The Property has also been listed on the commercial real estate websites: Costar, Loopnet, and AIR

8.       I have networked with other agents and brokers who know/have buyers for properties of this type. I estimate that I have shown the Property to at least 20 interested persons. I have met with agents representing prospective buyers at the property as quickly as I was able to determine a mutually acceptable date/time. I conducted negotiations with interested parties and had conversations with other agents and/or developers, who ultimately determined not to submit written offers or who wanted to submit offers below $800,000.

9.       I believe that Buyer's offer is the best offer that will be received for the purchase of this Property. I have no business or personal relationship with the Buyer or its owners.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on February 1, 2018, at ___ONTARIO___, California.



_____
Brian D. Melkesian
*Declarant*

SIMON RESNIK
HAYES LLP

# EXHIBIT A

# AIRCRE

## STANDARD OFFER, AGREEMENT AND ESCROW INSTRUCTIONS
## FOR PURCHASE OF REAL ESTATE
### (Non-Residential)

Dated:  January 8, 2018

**1. Buyer.**

1.1   Joel's Automotive, Inc. and/or Assignee , ("**Buyer**") hereby offers to purchase the real property, hereinafter described, from the owner thereof ("**Seller**") (collectively, the "**Parties**" or individually, a "**Party**"), through an escrow ("**Escrow**") to close 30 or  March 15, 2018  days after the waiver or expiration of the Buyer's Contingencies, ("**Expected Closing Date**") to be held by   Town & Country Escrow, Pam Walker  ("**Escrow Holder**") whose address is  391 N Main St., #102, Corona, CA 92880 , Phone No.  951-737-8860 , Facsimile No.  951-737-0760  upon the terms and conditions set forth in this agreement ("**Agreement**").  Buyer shall have the right to assign Buyer's rights hereunder, but any such assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

1.2   The term "**Date of Agreement**" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this document or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to purchase, the Property upon terms accepted by both Parties.

**2. Property.**

2.1   The real property ("**Property**") that is the subject of this offer consists of (insert a brief physical description)  a ±5,624 square foot industrial building  is located in the County of  San Bernardino , is commonly known as (street address, city, state, zip)  5512-A Arrow Hwy., Montclair, California 91763  and is legally described as:  to follow in escrow  (APN:  1007-661-26 ).

2.2   If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be completed or corrected to meet the requirements of  Commonwealth Land Title: Crystal Levvas  ("**Title Company**") which shall issue the title policy hereinafter described.

2.3   The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: electrical distribution systems (power panel, bus ducting, conduits, disconnects, lighting fixtures); telephone distribution systems (lines, jacks and connections only); space heaters; heating, ventilating, air conditioning equipment ("**HVAC**"); air lines; fire sprinkler systems; security and fire detection systems; carpets; window coverings; wall coverings; and  None  (collectively, the "**Improvements**").

2.4   The fire sprinkler monitor: ☐ is owned by Seller and included in the Purchase Price, ☐ is leased by Seller, and Buyer will need to negotiate a new lease with the fire monitoring company, ☑ ownership will be determined during Escrow, or ☐ there is no fire sprinkler monitor.

2.5   Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and  none  all of which shall be removed by Seller prior to Closing.

**3. Purchase Price.**

3.1   The purchase price ("**Purchase Price**") to be paid by Buyer to Seller for the Property shall be  $844,000.00 , payable as follows:

*(Strike any not applicable)*

(a)   Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash transaction, the Purchase Price):

$84,400.00

(b)   Amount of "New Loan" as defined in paragraph 5.1, if any:

$759,600.00

~~(c)   Buyer shall take title to the Property subject to and/or assume the following existing deed of trust ("Existing Deed(s) of Trust") securing the existing promissory note(s) ("Existing Note(s)"):~~
~~(i)   An Existing Note ("First Note") with an unpaid principal balance as of the Closing of approximately:~~

~~Said First Note is payable at _____ per month, including interest at the rate of _____ % per annum until paid (and/or the entire unpaid balance is due on _____~~
~~(ii)   An Existing Note ("Second Note") with an unpaid principal balance as of the Closing of approximately:~~

~~Said Second Note is payable at _____ per month, including interest at the rate of _____ % per annum until paid (and/or the entire unpaid balance is due on _____~~
~~(d)   Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the property, to secure the promissory note of Buyer to Seller described in paragraph 6 ("Purchase Money Note") in the amount of:~~

Total Purchase Price:                                                    $844,000.00

3.2   If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable

INITIALS
© 2017 AIR CRE.  All Rights Reserved.

INITIALS

OFA-20.00, Revised 01-03-2017

Existing Note.

**4.  Deposits.**

4.1  ☐ Buyer has delivered to Broker a check in the sum of _____ , payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder, or ☑ within 2 or _____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver to Escrow Holder a check in the sum of __$20,000.00__ . If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2  Additional deposits: **See paragraph 30**

(a)  Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of _____ to be applied to the Purchase Price at the Closing.

(b)  Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (m) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of _____ to be applied to the Purchase Price at the Closing.

(c)  If an Additional Deposit is not received by Escrow Holder within the time period provided then Seller may notify Buyer, Escrow Holder, and Brokers, in writing that, unless the Additional Deposit is received by Escrow Holder within 2 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

4.3  Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the **"Deposit"**), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____ . NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

4.4  Notwithstanding the foregoing, within 5 days after Escrow Holder receives the monies described in paragraph 4.1 above, Escrow Holder shall release $100 of said monies to Seller as and for independent consideration for Seller's' execution of this Agreement and the granting of the contingency period to Buyer as herein provided. Such independent consideration is non-refundable to Buyer but shall be credited to the Purchase Price in the event that the purchase of the Property is completed.

4.5  Upon waiver of all of Buyer's contingencies the Deposit shall become non-refundable but applicable to the Purchase Price except in the event of a Seller breach, or in the event that the Escrow is terminated pursuant to the provisions of Paragraph 9.1(n) (Destruction, Damage or Loss) or 9.1(o) (Material Change).

**5.  Financing Contingency.** *(Strike if not applicable)*

5.1  This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least __90__ % of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan (**"New Loan"**) shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2  Buyer hereby agrees to diligently pursue obtaining the New Loan. **If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing** within ~~within~~ _February 28, 2018_ ~~days following the Date of Agreement,~~ **that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived this New Loan contingency.**

5.3  If, after due diligence, Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

~~6.  Seller Financing. (Purchase Money Note). (Strike if not applicable)~~

~~6.1  If Seller approves Buyer's financials (see paragraph 6.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of _____ % per annum, with principal and interest paid as follows: _____ . The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.~~

~~6.2  The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):~~

~~(a)  Prepayment. Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.~~

~~(b)  Late Charge. A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~

~~(c)  Due On Sale. In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.~~

~~6.3  If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.~~

~~6.4  WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.~~

~~6.5  Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required~~

---

INITIALS

INITIALS

© 2017 AIR CRE. All Rights Reserved.

OFA-20.00, Revised 01-03-2017

~~documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the
option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller
financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall
be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's
Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.~~

**7.  Real Estate Brokers.**

7.1  The following real estate broker(s) (**"Brokers"**) and brokerage relationships exist in this transaction and are consented to by
the Parties (check the applicable boxes):

☑  _Lee & Associates®-Ontario, Brian Melkesian_  represents Seller exclusively (**"Seller's Broker"**);

☑  _Re/Max Resources, Lorinda Johnson_  represents Buyer exclusively (**"Buyer's Broker"**); or

☐  _____ represents both Seller and Buyer (**"Dual Agency"**).

The Parties acknowledge that other than the Brokers listed above, there are no other brokers representing the Parties or due any
fees and/or commissions under this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. Buyer
shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property
for a period of 1 year from the date inserted for reference purposes at the top of page 1.

7.2  Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker
or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated
herein, other than the Brokers named in paragraph 7.1, and no broker or other person, firm or entity, other than said Brokers is/are
entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party.
Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs,
expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party,
other than said named Brokers by reason of any dealings or act of the indemnifying Party.

**8.  Escrow and Closing.**

8.1  Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall
constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the
consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or
amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of
the Parties, Escrow Holder may, however, include its standard general escrow provisions. In the event that there is any conflict
between the provisions of the Agreement and the provisions of any additional escrow instructions the provisions of the Agreement
shall prevail as to the Parties and the Escrow Holder.

8.2  As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the
Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

8.3  Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law
and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal
Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where
the Escrow Holder is located, the law of the state where the Property is located shall prevail.

8.4  Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the **"Closing"**) by
recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing
the funds and documents in accordance with this Agreement.

8.5  Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any
required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title
insurance. (See also paragraph 11.)

8.6  Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters
contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (n), and (o), 9.4, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however,
matters of agreement between the Parties only and are not instructions to Escrow Holder.

8.7  If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2,
then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of
any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall, subject to the provisions of
paragraph 8.10, be promptly refunded all funds deposited by Buyer with Escrow Holder, less only the $100 provided for in paragraph
4.4 and the Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction
is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation
fees and costs.

8.8  The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing;
provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual
instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers,
in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated
without further notice or instructions.

8.9  Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation
to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the
performance of the obligations, agreements, covenants or warranties contained therein.

8.10    If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's
request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written
request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies
and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to
deliver any such report if the written contract which Buyer entered into with the consultant who prepared such report specifically
forbids the dissemination of the report to others.

**9.  Contingencies to Closing.** <span style="color:red">Per paragraph 29</span>

9.1  The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. **IF BUYER FAILS
TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED
THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT.** Buyer's

INITIALS                                                                                                          INITIALS

© 2017 AIR CRE. All Rights Reserved.                                           OFA-20.00, Revised 01-03-2017

conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by the Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives. With regard to subparagraphs (a) through (m) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a) *Disclosure.* Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR CRE ("**AIR**") standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet ("**Property Information Sheet**") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b) *Physical Inspection.* Buyer has 10 or _____ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c) *Hazardous Substance Conditions Report.* Buyer has 30 or _____ days following the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A "**Hazardous Substance**" for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "**Hazardous Substance Condition**" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d) *Soil Inspection.* Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days following the Date of Agreement.

(e) *Governmental Approvals.* Buyer has 30 or _____ days following the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

(f) *Conditions of Title.* Escrow Holder shall cause a current commitment for title insurance ("**Title Commitment**") concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment ("**Underlying Documents**"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g) *Survey.* Buyer has 30 or _____ days following the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association ("**ALTA**") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h) *Existing Leases and Tenancy Statements.* Seller shall within 10 or _____ days following the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "**Existing Leases**") affecting the Property, and with a tenancy statement ("**Estoppel Certificate**") in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has 10 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i) *Owner's Association.* Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with a statement and transfer package from any owner's association servicing the Property. Such transfer package shall at a minimum include: copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from the receipt of such documents to satisfy itself with regard to the association.

(j) *Other Agreements.* Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with legible copies of all other agreements ("**Other Agreements**") known to Seller that will affect the Property after Closing. Buyer has 10 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

(k) *Financing.* If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

(l) *Existing Notes.* If paragraph 3.1(c) has not been stricken, Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "**Loan Documents**") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement ("**Beneficiary Statement**") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or _____ days following the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof. Likewise if Seller is to carry back a Purchase Money Note then Seller shall within 10 or _____ days following the Date of Agreement provide Buyer with a copy of the proposed Purchase Money Note and Purchase Money Deed of Trust. Buyer has 10 or _____ days from the receipt of such documents to satisfy itself with regard to the form and content

INITIALS                                                                                                                INITIALS
© 2017 AIR CRE. All Rights Reserved.                                         OFA-20.00, Revised 01-03-2017

thereof.

(m) *Personal Property.* In the event that any personal property is included in the Purchase Price, Buyer has 10 or \_\_\_\_\_ days following the Date of Agreement to satisfy itself with regard to the title condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 or \_\_\_\_\_ days following the Date of Agreement.

(n) *Destruction, Damage or Loss.* Subsequent to the Date of Agreement and prior to Closing there shall not have occurred a destruction of, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price. If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

(o) *Material Change.* Buyer shall have 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change. **"Material Change"** shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

(p) *Seller Performance.* The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

(q) *Brokerage Fee.* Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers (**"Brokerage Fee"**). It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.

9.2 All of the contingencies specified in subparagraphs (a) through (m) of paragraph 9.1 are for the benefit of, and may be waived by, Buyer, and may be elsewhere herein referred to as **"Buyer's Contingencies."**

9.3 If any of Buyer's Contingencies or any other matter subject to Buyer's approval is disapproved as provided for herein in a timely manner (**"Disapproved Item"**), Seller shall have the right within 10 days following the receipt of notice of Buyer's disapproval to elect to cure such Disapproved Item prior to the Expected Closing Date (**"Seller's Election"**). Seller's failure to give to Buyer within such period, written notice of Seller's commitment to cure such Disapproved Item on or before the Expected Closing Date shall be conclusively presumed to be Seller's Election not to cure such Disapproved Item. If Seller elects, either by written notice or failure to give written notice, not to cure a Disapproved Item, Buyer shall have the right, within 10 days after Seller's Election to either accept title to the Property subject to such Disapproved Item, or to terminate this Agreement. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this Agreement. The above time periods only apply once for each Disapproved Item. Unless expressly provided otherwise herein, Seller's right to cure shall not apply to the remediation of Hazardous Substance Conditions or to the Financing Contingency. Unless the Parties mutually instruct otherwise, if the time periods for the satisfaction of contingencies or for Seller's and Buyer's elections would expire on a date after the Expected Closing Date, the Expected Closing Date shall be deemed extended for 3 business days following the expiration of: (a) the applicable contingency period(s), (b) the period within which the Seller may elect to cure the Disapproved Item, or (c) if Seller elects not to cure, the period within which Buyer may elect to proceed with this transaction, whichever is later.

9.4 The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

**10. Documents Required at or Before Closing.**

10.1    Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2    Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a) Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

(b) If applicable, the Beneficiary Statements concerning Existing Note(s).

(c) If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d) If applicable, Estoppel Certificates executed by Seller and/or the tenant(s) of the Property.

(e) An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

(f) If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

(g) If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

(h) If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3    Buyer shall deliver to Seller through Escrow:

(a) The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date provided, however,

INITIALS _____

INITIALS _____

© 2017 AIR CRE. All Rights Reserved.

OFA-20.00, Revised 01-03-2017

that Buyer shall not be required to deposit such monies into Escrow if at the time set for the deposit of such monies Seller is in default or has indicated that it will not perform any of its obligations hereunder. Instead, in such circumstances in order to reserve its rights to proceed Buyer need only provide Escrow with evidence establishing that the required monies were available.

(b)  If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.

(c)  The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.

(d)  Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.

(e)  If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.

(f)  If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.

10.4    At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer.  In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.

**IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED.  A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.**

**11.  Prorations and Adjustments.**

11.1    *Taxes.*  Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available.  The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by reason of events occurring prior to the Closing.  Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2    *Insurance.*  **WARNING:** Any insurance which Seller may have maintained will terminate on the Closing.  Buyer is advised to obtain appropriate insurance to cover the Property.

11.3    *Rentals, Interest and Expenses.*  Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing.  The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4    *Security Deposit.*  Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5    *Post Closing Matters.*  Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

11.6    *Variations in Existing Note Balances.*  In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof (**"Existing Note Variation"**), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation.  If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.

11.7    *Variations in New Loan Balance.*  In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.

11.8    *Owner's Association Fees.*  Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

**12.  Representations and Warranties of Seller and Disclaimers.**

12.1    Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and any lawsuit or action based upon them must be commenced within such time period.  Seller's warranties and representations are true, material and relied upon by Buyer and Brokers in all respects.  Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a)  *Authority of Seller.*  Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b)  *Maintenance During Escrow and Equipment Condition At Closing.*  Except as otherwise provided in paragraph 9.1(n) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c)  *Hazardous Substances/Storage Tanks.*  Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.

(d)  *Compliance.*  Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e)  *Changes in Agreements.*  Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f)  *Possessory Rights.*  Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g)  *Mechanics' Liens.*  There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

(h)  ~~*Actions, Suits or Proceedings.*  Seller has no knowledge of any actions, suits or proceedings pending or threatened~~

INITIALS                                                                                                                    INITIALS
© 2017 AIR CRE.  All Rights Reserved.                                                OFA-20.00, Revised 01-03-2017

~~before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.~~

(i)   *Notice of Changes.*   Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(o)) affecting the Property that becomes known to Seller prior to the Closing.

~~(j)   *No Tenant Bankruptcy Proceedings.*   Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.~~

~~(k)   *No Seller Bankruptcy Proceedings.*   Seller is not the subject of a bankruptcy, insolvency or probate proceeding.~~

(l)   *Personal Property.*   Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2    Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property.  The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party hereto.

12.3    In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4    Any environmental reports, soils reports, surveys, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk.  Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

**13. Possession.**
Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

**14. Buyer's Entry.**
At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement.  No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld.  Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the re-compaction or removal of any disrupted soil or material as Seller may reasonably direct.  All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

**15. Further Documents and Assurances.**
The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement.  The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

**16. Attorneys' Fees.**
If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees and costs.  Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment.  The term **"Prevailing Party"** shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense.  The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

**17. Prior Agreements/Amendments.**
17.1    This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.
17.2    Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

**18. Broker's Rights.**
18.1    If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated.  If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.
18.2    Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

**19. Notices.**
19.1    Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger, or by mail, postage prepaid, to the address set forth in this agreement or by facsimile transmission, electronic signature, digital signature, or email.
19.2    Service of any such communication shall be deemed made on the date of actual receipt if personally delivered, or transmitted by facsimile transmission, electronic signature, digital signature, or email.  Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed.  Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier.  If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

INITIALS                                                                                                                  INITIALS
© 2017 AIR CRE.  All Rights Reserved.                                        OFA-20.00, Revised 01-03-2017

19.3    Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

**20. Duration of Offer.**

20.1    If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of _Ontario, CA_ on the date of _January 15, 2018_ , it shall be deemed automatically revoked.

20.2    The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

**21. LIQUIDATED DAMAGES. (This Liquidated Damages paragraph is applicable only if initialed by both Parties).**
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT. THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF _$40,000.00_ . UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

_____                    _____
        Buyer's Initials                                                 Seller's Initials

**22. ARBITRATION OF DISPUTES.** (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)

22.1    ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. THE NUMBER OF ARBITRATORS SHALL BE AS PROVIDED IN THE COMMERCIAL RULES AND EACH SUCH ARBITRATOR SHALL BE AN IMPARTIAL REAL ESTATE BROKER WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THE ARBITRATOR OR ARBITRATORS SHALL BE APPOINTED UNDER THE COMMERCIAL RULES. AND SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE EXECUTED BY AT LEAST 2 OF THE 3 ARBITRATORS, BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 16 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.

22.2    BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3    NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

_____                    _____
        Buyer's Initials                                                 Seller's Initials

**23. Miscellaneous.**

23.1    **Binding Effect.** This Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.

23.2    **Applicable Law.** This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located. Any litigation or arbitration between the Parties hereto concerning this Agreement shall be initiated in the county in which the Property is located.

23.3    **Time of Essence.** Time is of the essence of this Agreement.

23.4    **Counterparts.** This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5    **Waiver of Jury Trial.** THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

23.6    **Conflict.** Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions. **Seller and Buyer must initial any and all handwritten provisions.**

23.7    **1031 Exchange.** Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange. The cooperating Party shall not have any liability (special or otherwise) for damages to the exchanging Party in the event that the sale is delayed and/or that the sale otherwise fails to qualify as a 1031 exchange.

23.8    **Days.** Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and

INITIALS                                                                                                                              INITIALS
© 2017 AIR CRE.  All Rights Reserved.
OFA-20.00, Revised 01-03-2017

refer to calendar days.

**24. Disclosures Regarding The Nature of a Real Estate Agency Relationship.**

24.1    The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.

24.2    When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:

(a) *Seller's Agent.* A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) *To the Seller:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(b) *Buyer's Agent.* A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) *To the Buyer:* A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) *To the Buyer and the Seller:* a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(c) *Agent Representing Both Seller and Buyer.* A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

(d) *Further Disclosures.* Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer representation agreement or separate document. Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties that may be of interest to this Buyer. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

24.3    *Confidential Information.* Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

**25. Construction of Agreement.** In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

**26. Additional Provisions.**
Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum or addenda consisting of paragraphs
___28___ through ___32___ . (If there are no additional provisions write "NONE".)

---

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:
1.  SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.
2.  RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

---

NOTE:
1.  THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.

© 2017 AIR CRE.  All Rights Reserved.

OFA-20.00, Revised 01-03-2017

**2.   IF EITHER PARTY IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.**

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

Date: <u>1-17-2018</u>

| **BROKER** | **BUYER** |
|---|---|
| <u>Re/Max Resources</u> | <u>Joel's Automotive, Inc. and/or Assignee</u> |
| Attn: <u>Lorinda Johnson</u> | By: _____ |
| Title: _____ | Name Printed: <u>Joel M. Lebron</u> |
| | Title: <u>C.E.O.</u> |
| Address: <u>101 N. Indian Hill Blvd., Suite C1-208, Claremont, CA 91711</u> | Phone: <u>909-946-7687</u> |
| Phone: <u>909-561-7338</u> | Fax: _____ |
| Fax: _____ | Email: <u>JOELS.Automotive@verizon.net</u> |
| Email: _____ | By: _____ |
| Federal ID No.: _____ | Name Printed: _____ |
| Broker/Agent BRE License #: <u>01857852/00431764</u> | Title: _____ |
| | Phone: _____ |
| | Fax: _____ |
| | Email: _____ |
| | Address: _____ |
| | Federal ID No.: _____ |

**27. Acceptance.**

27.1    Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.

27.2    In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to  <u>6</u>  % of the Purchase Price to be divided between the Brokers as follows: Seller's Broker  <u>3</u>  % and Buyer's Broker  <u>3</u>  %. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.

27.3    Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

**NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.**

Date: _____

| **BROKER** | **SELLER** |
|---|---|
| <u>Lee & Associates®-Ontario</u> | <u>WHAA LLC</u> |
| Attn: <u>Brian Melkesian</u> | By: _____ |
| Title: <u>Senior Vice President</u> | Name Printed: <u>Henry Wallach</u> |
| | Title: _____ |
| Address: <u>3535 Inland Empire Blvd., Ontario, CA 91764</u> | Phone: _____ |
| Phone: <u>909-989-7771</u> | Fax: _____ |
| Fax: <u>909-944-8250</u> | Email: _____ |
| Email: <u>bmelkesian@lee-assoc.com</u> | By: _____ |
| Federal ID No.: <u>33-0263082</u> | Name Printed: <u>Akemi Uomoto</u> |
| Broker/Agent BRE License #: <u>01839590</u> | Title: _____ |
| | Phone: _____ |
| | Fax: _____ |
| | Email: _____ |
| | Address: _____ |
| | Federal ID No.: _____ |

**AIR CRE. 500 North Brand Blvd, Suite 900, Glendale, CA 91203, Tel 213-687-8777, Email contracts@aircre.com**
**NOTICE: No part of these works may be reproduced in any form without permission in writing.**

INITIALS

Page 10 of 10
Last Edited: 1/17/2018 5:02 PM

INITIALS

© 2017 AIR CRE.  All Rights Reserved.

OFA-20.00, Revised 01-03-2017

**ADDENDUM TO THAT CERTAIN STANDARD OFFER, AGREEMENT AND ESROW
INSTRUCTIONS ("AGREEMENT") DATED JANUARY 8, 2018
BY AND BETWEEN
WHAA LLC ("SELLER")
AND
JOEL'S AUTOMOTIVE, INC. AND/OR ASSIGNEE ("BUYER")
5512-A ARROW HWY
MONTCLAIR, CA 91763**

**28.  Condition of Property:** Buyer is buying the property in its "As-Is, Where-Is" condition, and Buyer has the right to conduct inspections of the property during the escrow period per the agreement.

**29.  Buyer's Contingencies
and Removal Periods:**       A) Buyer shall have until February 15, 2018 5:00 p.m., to remove all contingencies outlined in Paragraph 9.1 of the Agreement with the exception of those contingencies which will require Seller to provide Buyer with documents.       The contingencies, which are dependent upon Seller providing documents, must be satisfied by Buyer upon the latter of February 15, 2018, 5:00 p.m. or three (3) days after Buyer's receipt of the documents. Buyer shall have until February 28, 2018, 5:00 p.m. to remove Buyer's Financing Contingencies including those in paragraph 5 of the Agreement. The documents that the Seller shall provide are the following:
- Preliminary Title Report (PTR)
- Completed AIR Property Information Sheet
- Seller's Mandatory Disclosure Sheet

Additionally, the seller will provide the following documents if in their possession:
- Association CC&R'S
- Building Plans
- Environmental Reports

B) In the event that the Seller's Contingency in paragraph 32 has not been waived on or before the Buyer's Due Diligence Contingency date, then the Buyer's Due Diligence Contingency date will be pushed out until the close of business on the third (3rd) day after the Contingency in paragraph 32 has been waived, not to exceed forty-five (45) additional days. Any extension of this Due Diligence Contingency date will be reflected in the Close of Escrow date.

In the event the Buyer cancels escrow for any reason during the contingency period, the Buyer's deposit will by fully refunded with no further liability.

**30.  Deposits**       At the opening of escrow, an Earnest Money Deposit in the amount of $20,000.00 shall be deposited by Buyer into Escrow. Upon removal of Buyer's contingencies in paragraph 5 and 9.1, and as modified in paragraph 29, the Buyer will deposit an additional $20,000.00. This will bring the total deposits to $40,000.00. Buyer's $40,000.00 deposit shall then become non-refundable to Buyer. The entire deposit shall be held in escrow and shall serve as liquidated damages in the event Buyer fails to close the Escrow by defaulting on a term of this contract, in which case said deposit shall be the sole damages recoverable for the breach by Buyer on any of the terms of this contract. All deposits shall be held in an interest-bearing account with the interest accruing for the party that ultimately receives the Deposit from Escrow



I:\BMelkesian\Addendum - Amendments\2018\Joel Automotive - WHAA re 5512-A Arrow Hwy.  (Addendum).doc

ADDENDUM TO THAT CERTAIN STANDARD OFFER, AGREEMENT AND ESROW
INSTRUCTIONS ("AGREEMENT") DATED JANUARY 8, 2018
BY AND BETWEEN
WHAA LLC ("SELLER")
AND
JOEL'S AUTOMOTIVE, INC. AND/OR ASSIGNEE ("BUYER")
5512-A ARROW HWY
MONTCLAIR, CA 91763

31.  **Independent
Investigation:**    Seller and Buyer acknowledge that broker has made no
Representation or Warranties regarding the physical condition of
the property and suitability for the Buyer's use. Seller and Buyer
are relying on their own independent investigation in making or
accepting this Offer. Brokers make no representation or
recommendation as to the legal sufficiency, legal effect or tax
consequence of this Proposal of the transaction to which it relates.
The parties are urged and instructed to seek the advice of counsel
as to the legal and tax consequences of this transaction.

32. **Contingency:**    This Purchase Contract is Contingent upon the approval of the
bankruptcy courts and the necessary steps as required by this
courts. In the event the Buyer is unable to acquire the property due
to an Overbidder, if approved by the court the Buyer shall receive
a flat fee of $35,000.00 to cover the Buyer's out of pocket
expenses for the property's due diligence. This Overbid flat fee
will be paid out of escrow between the Seller and the Overbidder at
the close of escrow.

Buyer and Seller both understand and accept that this Addendum is intended to be a part of the
Agreement and that in the event of any conflict between the language of the Agreement and this
Addendum, the Addendum language shall prevail and supersede.

*AGREED AND ACCEPTED:*          *AGREED AND ACCEPTED:*

*Seller: WHAA LLC*               *Buyer: Joel's Automotive, Inc., and/or
Assignee*

*By:* _____     *By:* _____
        **Henry Wallach**                        **Joel M. Lebron**

*Date:* _____     *Date:* ____1-17-18____

*By:* _____
        **Akemi Uomoto**

*Date:* _____

I:\BMelkesian\Addendum - Amendments\2018\Joel Automotive - WHAA re 5512-A Arrow Hwy.   (Addendum).doc



# UNIFORM DISCLAIMER FORM
## SALE FORM

1. **LEGAL EFFECT.** Upon acceptance of the Purchase Contract and Deposit Receipt, or any counteroffer thereto, Seller and Buyer both intend to have a binding legal agreement for the purchase of the Premises on the terms and conditions set forth therein.

   Seller and Buyer acknowledge that Broker is not qualified to practice law, nor authorized to give legal advice or counsel you as to any legal matters affecting this document. Broker hereby advises Seller and Buyer to consult with their respective attorneys in connection with any questions each may have as to legal ramifications or effects of this document, prior to its execution.

2. **FORM OF PURCHASE CONTRACT AND DEPOSIT RECEIPT.** The proposed document is a standard form document, and Broker makes no representations or warranties with respect to the adequacy of this document for either Seller's or Buyer's particular purposes. Broker has, at the direction of Seller and/or Buyer, "filled in the blanks" from information provided to Broker based on prior correspondence, discussions of the parties with respect to the Purchase Contract and Deposit Receipt, and subsequent counteroffers between the parties hereto. By initialing this paragraph, Seller and Buyer acknowledge and agree that the Purchase Contract and Deposit Receipt is delivered to each subject to the express condition that Broker has merely followed the instructions of the parties in preparing this document, and does not assume any responsibility for its accuracy, completeness or form. Seller and Buyer acknowledge and agree that in providing this document, Broker has acted to expedite this transaction on behalf of Seller and Buyer, and has functioned within the scope of professional ethics by doing so.

   Seller's Initials:_____    Buyer's Initials:_____

3. **NO INDEPENDENT INVESTIGATION.** Seller and Buyer acknowledge and understand that any financial statements, information, reports, or written materials of any nature whatsoever, as provided by the parties to Broker, and thereafter submitted by Broker to either Seller and/or Buyer, are so provided without any independent investigation by Broker, and as such Broker assumes no responsibility or liability for the accuracy or validity of the same. Any verification of such submitted documents is solely and completely the responsibility of the party to whom such documents have been submitted.

4. **NO WARRANTY.** Seller and Buyer acknowledge and agree that no warranties, recommendations, or representations are made by the broker as to the accuracy, the legal sufficiency, the legal effect of the tax consequences of any of the documents submitted by Broker to Seller and/or Buyer referenced in Paragraph 3 above, nor of the legal sufficiency, legal effect, or tax consequences of the transactions contemplated thereby. Furthermore, Seller and Buyer acknowledge and agree that Broker has made no representations concerning the ability of the Buyer to use the Premises for their intended use, and Buyer is relying solely on its own investigation of the Premises in accepting the Purchase Contract and Deposit Receipt.

5. **NOTICE REGARDING HAZARDOUS WASTES OR SUBSTANCES AND UNDERGROUND STORAGE TANKS.** Although Broker will disclose any knowledge it actually possesses with respect to the existence of any hazardous wastes, substances, or underground storage tanks at the Premises, Broker has not made any independent investigations or obtained reports with respect thereto, except as may be described in a separate written document signed by Broker. All parties hereto acknowledge and understand that Broker makes no representations regarding the existence or nonexistence of hazardous wastes, substances, or underground storage tanks at the Premises. Each party should contact a professional, such as a civil engineer, geologist, industrial hygienist or other persons with experience in these matters to advise you concerning the property.

6. **DISCLOSURE RESPECTING AMERICANS WITH DISABILITIES ACT.** The United States Congress has recently enacted the Americans With Disabilities Act. Among other things, this act is intended to make many business establishments equally accessible to persons with a variety of disabilities; modifications to real property may be required. State and local laws also may mandate changes. Broker is not qualified to advise you as to what, if any, changes may be required now or in the future. Broker recommends that you consult the attorneys and qualified design professionals of your choice for information regarding these matters.

7. **ATTORNEYS' FEES.** In any action, proceeding or arbitration arising out of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

8. **ENTIRE AGREEMENT.** This document constitutes the entire agreement between parties with respect to the subject matter contained herein and supersedes all prior or contemporaneous agreements, representations, negotiations and understandings of the parties, other than such writings as may be executed and/or delivered by the parties pursuant hereto. There are no oral agreements or implied covenants by the Seller or Buyer, or by their respective employees, or other representatives.

Date:_____    Date:_____1-18-18_____

Seller:_____    Buyer:_____
Henry Wallach /Akemi Uomoto                 Joel's Automotive, Inc., and/or Assignee



**DISCLOSURE REGARDING REAL ESTATE AGENCY**
**As required by the Civil Code**

Please note that the terms "Seller" and "Buyer" are defined by the CA Civil Code to include a Lessor and Lessee, respectively.
*If you are a Listing Agent* - you must deliver the form to the Seller/Lessor before entering into the listing agreement. If the Buyer/Lessee is not represented by an agent, you must also deliver the form to it within one business day after receiving an offer from the Buyer/Lessee.
*If you are the Buyer's Agent* - you must deliver the form to the Buyer/Lessee as soon as the Buyer/Lessee seeks your services, but in any event before the Buyer/Lessee signs an offer. In addition, you must also deliver the form to the Seller/Lessor before or concurrently with presenting an offer.

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

### SELLER'S/LESSOR'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### BUYER'S/LESSEE'S AGENT

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer.
To the Buyer and the Seller
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

### AGENT REPRESENTING BOTH SELLER/LESSOR AND BUYER/LESSEE

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer
    (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional. Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on the reverse hereof. Read it carefully.

**REPRESENTATION CONFIRMATION**

Property Name:_____

Property Street Address, City State 5512-A Arrow Hwy. Montclair, CA 91763

Further described as: +/- 5,624 sf Industrial Building

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE ATTACHED.**

Date:_____ Agent: Lee& Associates- Ontario _____ BRE Lic # 00976995

By:_____ BRE Lic # 01839590

Brian Melkesian
                             is the Agent of (check one)
☑ the Seller/Lessor exclusively; or ☐ both the Buyer/Lessee and the Seller/Lessor.

Date: 1-17-2018 Agent: Re/Max Resources _____ BRE Lic # 01857852

By: Lorinda Ann Johnson _____ BRE Lic # 00431764

Lorinda Johnson
                            is the Agent of (check one)
☑ the Buyer/Lessee exclusively; or ☐ both the Buyer/Lessee and the Seller/Lessor.

| SELLER/LESSOR: | BUYER/LESSEE: |
|---|---|
| WHAA LLC | Joel's Automotive, Inc. and/or Assignee |
| BY:_____ | BY:_____ |
| PRINT NAME: Henry Wallach/ Akemi Uomoto | PRINT NAME: Joel M. Lebron |
| TITLE:_____ | TITLE:_____ |
| DATE:_____ | DATE: 1-12-18 |

**LEE & ASSOCIATES®**
COMMERCIAL REAL ESTATE SERVICES
**ONTARIO**

# DISCLOSURE REGARDING REAL ESTATE AGENCY
### Civil Code Sections 2079.13 Through 2079.24

**2079.13.** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained.
(b) 'Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions.
(c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee.
(d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Sections 1940) of Title 5, mobile homes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29.
(e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction.
(f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer.
(g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation.
(h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent.
(i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property.
(j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent which becomes the contract for the sale of the real property upon acceptance by the seller.
(k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property which constitutes or is improved with one to four dwelling units, any leasehold in this type of property exceeding one year's duration, and mobile homes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code.
(l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase.
(m) "Sell," "sale" or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration.
(n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller includes both a vendor and a lessor.
(o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller.
(p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14.** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c). shall obtain a signed acknowledgment of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows:
(a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement.
(b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision.
(c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgment of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgment of receipt is required.
(d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16.** Reproduced on Page 1 of this form.

**2079.17.** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively.

(b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.

(c) The confirmation required by subdivisions (a) and (b) shall be in the following form:

> DO NOT COMPLETE – SAMPLE ONLY _____ is the Listing agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
> (Name of Listing Agent)
> DO NOT COMPLETE – SAMPLE ONLY _____ is the agent of (check one): ☐ the buyer exclusively; or ☐the seller exclusively; or ☐ both the buyer and seller.
> (Named of Selling Agent if not the same as the Listing Agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18.** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19.** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20.** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21.** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22.** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not. of itself, make that agent a dual agent.

**2079.23.** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24.** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.



**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:  **15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403.**

A true and correct copy of the foregoing document entitled **NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C. §363 FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS, AND GRANTING CERTAIN OTHER RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF HENRY WALLACH, BRIAN D. MELKESIAN IN SUPPORT THEREOF** be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **2/5/2018** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐   Service information continued on attached page.

- **Abram Feuerstein    abram.s.feuerstein@usdoj.gov**
- **Barry S Glaser    bglaser@swesq.com, erhee@swesq.com**
- **Everett L Green    everett.l.green@usdoj.gov**
- **M Jonathan Hayes    jhayes@srhlawfirm.com, roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;jhayesecf@gmail.com**
- **Margarit Kazaryan    kazaryanlaw@gmail.com, margokazaryan@gmail.com**
- **Scott Talkov    stalkov@rhlaw.com**
- **Mohammad Tehrani    Mohammad.V.Tehrani@usdoj.gov**
- **Sean A Topp    stopp@swesq.com, erhee@swesq.com**
- **United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov**
- **David M Wiseblood    dwiseblood@wisebloodlaw.com, dmwadmin@wisebloodlaw.com**

**II.  SERVED BY U.S. MAIL:** On **2/5/2018** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

***SERVED VIA CERTIFIED MAIL:***

**OSM Loan Acquisitions IX Limited Partnership (1st lienholder)**

OSM Loan Acquisitions IX Limited partnership
Stephen F. Lambert
Lambert & Rogers, APLC
359 West Madison Ave., Suite 100
El Cajon, CA 92020

**SIMON RESNIK
HAYES LLP**

**TMC Financing – SBA (2nd lienholder)**

United States Small Business Administration
David M. Wiseblood
601 Montgomery Street, Suite 2000
San Francisco, CA 94111

U.S. Small Business Administration
330 N. Brand Blvd., Ste 1200
Glendale, CA 91203-2320

**ARROW HIGHWAY BUILDING OWNERS ASSOCIATION**

Arrow Highway Bldg. Owners Assoc.
c/o Sean A. Topp., Steckbauer Weinhart
333 S. Hope Street, 36th Floor
Los Angeles, CA 90071

**SAN BERNARDINO COUNTY TAX COLLECTOR**

**Entity Address from Schedules:**

San Bernardino County Tax Collector
168 West Hospitality Lane
San Bernardino, CA 92415-0001

**Entity Address from POC:**

County of San Bernardino
Office of the Tax Collector
268 W Hospitality Ln 1st Flr
San Bernardino CA 92415-0360

**Entity Main Address from California Secretary of State Website:**

None.

**Entity's Agent for Service of Process per California Secretary of State Website:**

None.

**Entity Main Address from its Website:**

County of San Bernardino
Office of the Tax Collector
268 W Hospitality Ln 1st Flr
San Bernardino CA 92415-0360

**Entity Officer Name and Address from its Website:**

None.

**Entity Main Address from FDIC Website:**

None.

1
2

### *SERVED VIA U.S. MAIL:*

3  Hon. Mark S. Wallace
   U.S. Bankruptcy Court
   Central District – Santa Ana Branch
4  411 West Fourth Street, Suite 6135
   Santa Ana, CA 92701-4593
5

6  WHAA LLC
   5494 Arrow Hwy
   Montclair, CA 91763-1604
7

8  Akemi Uomoto
   5494 Arrow Highway
   Montclair, CA 91763-1604
9

   Debtors' agent/broker:
10

11 Brian Melkasian
   Lee & Associates | Ontario
   3535 Inland Empire Blvd.
12 Ontario, CA 91764

13 Buyer c/o agent/broker:

14 Joel's Automotive, Inc.
   c/o Lorinda Johnson
15 REMAX Resources
   101 N. Indian Hill Blvd., Suite C1-208
16 Claremont, CA 91711

17

18 ### *ALL REMAINING CREDITORS:*

   Employment Development Dept.
19 Bankruptcy Group MIC 92E                    Riverside Division
   P.O. Box 826880                             3420 Twelfth Street,
20 Sacramento, CA 94280-0001                   Riverside, CA 92501-3819

21 Franchise Tax Board                         Arrow Highway Building Owners Assn
   Bankruptcy Section MS: A-340                733 W. Monticello St
22 P.O. Box 2952                               Ontario, CA 91762-6333
   Sacramento, CA 95812-2952
23                                             Biodata Medical Laboratories
   Internal Revenue Service                    5494 Arrow Highway
24 PO Box 7346                                 Montclair, CA 91763-1604
   Philadelphia, PA 19101-7346
25                                             FRANCHISE TAX BOARD
   Reid & Hellyer APC                          BANKRUPTCY SECTION MS A340
26 P.O. Box 1300                               PO BOX 2952
   Riverside, CA 92502-1300                    SACRAMENTO CA 95812-2952
27
   Securities & Exchange Commission            Henry Wallach
28 444 South Flower St., Suite 900             5494 Arrow Highway
   Los Angeles, CA 90071-2934                  Montclair, CA 91763-1604

Lucas, Horsfall, Murphy & Pindroh
100 E. Corson Street, Suite 200
Pasadena, CA 91103-3841

CALIFORNIA STATE BOARD OF
EQUALIZATION
ACCOUNT REFERENCE GROUP MIC
29
P O BOX 942879
SACRAMENTO CA 94279-0029

TriCore Reference Lab
Attn:  Kent Gordon
1001 Woodward Place NE
Albuquerque, NM 87102-2705

United States Small Business
Administration
United States Trustee

3801 University Avenue, Suite 720
Riverside, CA 92501-3255

United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3255

Margarit Kazaryan
535 N. Brand Blvd., Suite 260
Glendale, CA 91203

RETURNED MAIL/REMOVED
CREDITORS:

Margarit Kazaryan
1200 S Brand Blvd Ste 180
Glendale, CA 91204-2641

**III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **2/5/2018** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 2/5/2018 | Ja'Nita Fisher | /s/ Ja'Nita Fisher |
|---|---|---|
| *Date* | *Type Name* | *Signature* |